IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| H-W TECHNOLOGY, L.C. | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:13-CV-1922-G |
| | § | |
| DOMINO'S PIZZA, LLC, ET AL., | § | |
| Defendants. | § | Pretrial Management |

<u>FINDINGS, CONCLUSIONS, AND RECOMMENDATION</u>

By standing order of reference dated June 4, 2013, this case has been referred for pretrial management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions. Before the Court is *Defendant Domino's Pizza, LLC, et al.'s Motion to Transfer to the Eastern District of Michigan*, filed July 25, 2013 (doc. 25). Based on the relevant filings and applicable law, the motion to transfer should be **DENIED**.

## I. BACKGROUND

H-W Technology, Inc. (Plaintiff) sues Domino's Pizza, LLC, and Domino's Pizza Inc. (Defendants) under 35 U.S.C. § 271 for allegedly infringing U.S. Patent No. 7,525,955 (the '955 patent). (Doc. 1.) Plaintiff alleges that Defendants are infringing the '955 patent "by making, using, importing, selling or offering to sell products that have systems and/or methods for allowing a multi-convergence device utilizing a domain specific application to complete a merchant transaction without the need to generate a voice call." (*Id.* at 3-4.)

Defendants' principal place of business is located in Ann Arbor, Michigan, which is located in the Eastern District of Michigan . (Doc. 24 at 2-3.) They move to transfer all proceedings against them to that district under 42 U.S.C. § 1404(a). (Doc. 25 at 1.) The motion has been fully briefed

and is ripe for decision.[1]

## II.  MOTION TO TRANSFER

A district court may transfer any civil case "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  As a threshold matter, the language of § 1404(a) requires the court to determine whether the proposed transferee district is one in which the suit might have been brought.  *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir.  2003).  Once this threshold has been met, the court considers the two issues identified by § 1404(a): (1) "the convenience of parties and witnesses"; and (2) "the interest of justice."  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir.  2004) (*Volkswagen I*); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir.  2008) (*Volkswagen II*).

For the convenience issue, the Fifth Circuit has adopted the *forum non conveniens* private and public interest factors as the factors to determine the § 1404(a) venue transfer question.  *Volkswagen II*, 545 F.3d at 314-15, n.9 (5th Cir.  2008); *see also Volkswagen I*, 371 F.3d at 203.  The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Volkswagen I*, 371 F.3d at 203 (citing *Piper Aircraft Co.  v.  Hartzell Propeller, Inc.*, 454 U.S. 235, 241 n.6 (1981)).  The public interest factors are: "(1) the administrative

---

[1]Plaintiff moves for leave to file a sur-reply to Defendants' reply brief on grounds that it "impermissibly adds substantial new arguments."  (*See* doc. 33 at 1.)  These "substantial new arguments" consist of the statement that "'[t]he orders are processed by Domino's ordering system located in Michigan.'"  (*Id.*)  The motion is **DENIED** because Defendants specifically addressed the location of their servers, where their applications reside, in their opening brief.  (*See* doc. 25 at 2-3.)  Notably, consideration of the proposed sur-reply would not result in a different outcome.

difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict laws [or in] the application of foreign law." *Id.* A plaintiff's choice of venue is not a separate factor in the transfer of venue analysis. *Volkswagen II*, 545 F.3d at 314 n.10. Rather, it is "to be treated as a burden of proof question," and "deference" to plaintiff's choice of venue is reflected in the movant's burden to show good cause for the transfer. *See id.* (citation and internal marks omitted). The movant must show that considering both the convenience of the parties and witnesses and the interest of justice under § 1404(a), the transferee venue is "clearly more convenient." *Id.* at 315.

## A.  Proposed Transferee District

The threshold consideration is whether this suit might have been brought in the Eastern District of Michigan. *In re Horseshoe Entm't*, 337 F.3d at 433. For all civil actions brought in a United States district court, venue is proper in

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). In addition, Congress has adopted a special venue statute for patent litigation, which provides that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established business." 28 U.S.C. § 1400(b).

The parties agree that Plaintiff could have brought this action against Defendants in the

Eastern District of Michigan. (Docs. 25 at 7; 31 at 8.) The evidence they submitted supports this conclusion: (1) Defendants' corporate headquarters are located in the transferee district, Ann Arbor, Michigan; (2) its accused products were designed and developed there; and (3) the servers that support the accused products are located there. (Doc. 25-1 at 2); 28 U.S.C. § 1400(b).

## B. Convenience to Parties and Witnesses

Since the proposed transferee district is one in which the suit might have been brought, the next step is to determine whether the *forum non conveniens* factors favor transfer to that district.

### 1. Private Interest Factors

#### a. Relative Ease of Access to Sources of Proof

The first private interest factor is the relative ease of access to sources of proof. *Volkswagen I*, 371 F.3d at 203. Defendants contend that it will be substantially more convenient to access sources of proof in the proposed venue because the vast majority of relevant documents, such as technical documents on Defendants' accused products and servers, marketing and sales material on the accused products, and damage-related financial documents, are located in Ann Arbor, Michigan. (Doc. 25 at 8.) Plaintiff responds that the location of the documents is inconsequential because the vast majority of proof in this case will involve electronically produced documents.[2] (Doc. 31 at 9.)

The first private interest factor weighs in favor of transfer when evidence can be more readily accessed from the transferee district. *Internet Machines LLC v. Alienware Corp.*, 2011 WL 2292961, at *5 (E.D. Tex. June 7, 2011). Although technological advances have made access to sources of proof more convenient, the advances have not rendered the sources of proof factor

---

[2]Plaintiff also argues that Defendants failed to specifically identify the documents that are more conveniently accessible in Michigan, but the declaration by Defendants' vice president for operations technology sufficiently identifies the documents. (*See* doc. 25-1 at 2-3.)

superfluous, and the factor is still meaningful in the § 1404(a) analysis.  *See Volkswagen II*, 545 F.3d at 315; *In re TS Tech USA Corp.* 551 F.3d 1315, 1319 (Fed. Cir. 2008); *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009).  The factor is even more significant in patent infringement cases because the bulk of the relevant evidence in those cases usually comes from the accused infringer. *In re Genentech, Inc.*, 566 F.3d at 1345.  The place where the alleged infringer's documents are kept therefore weighs in favor of transfer to that location.  *Id.*

Defendants submitted a declaration by their vice president for operations technology and support, showing that paper and electronic documents related to "the design, development, operation, maintenance and financial transactions of the accused applications are located" in its headquarters in the proposed transferee venue.  (Doc. 25-1 at 3.)  The first factor therefore favors transfer to the Eastern District of Michigan.  *See In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) (sources of proof factor favored transfer when it appeared that a significant portion of the evidence would be located in the proposed transferee district).

### b.  *Availability of Compulsory Process*

The second private interest factor is the availability of compulsory process to secure the attendance of witnesses.  *Volkswagen I*, 371 F.3d at 203.  This factor favors transfer when a transferee district has absolute subpoena power over a greater number of non-party witnesses. *Internet Machines*, 2011 WL 2292961, at *6 (citing *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336-37 (Fed. Cir. 2009)).

Defendants concede that the second factor is neutral because it is too early to identify whether more third-party witnesses will be from Michigan, but they argue that they "expect[ ] that more third party witness will be located in the Eastern District of Michigan."  (Doc. 25 at 9-10.)

Plaintiff responds that Defendants do not account for the witnesses available in this district, their franchisees and customers. (Doc. 31 at 11.) Plaintiff argues that it may use these witnesses to prove infringement and damages. (*Id.*)

Defendants have generally established that its third party witnesses will more likely be from Michigan and will likely have more knowledge of the accused products and technologies, and claims of damages, than any of Defendants' franchisees who were not involved in the research, design, and development of the accused products and technologies. To the extent, if any, the subpoena powers of the Northern District of Texas may be invoked under Fed. R. Civ. P. 45(b)(2) with respect to non-party Defendants' employees, those powers will be of little use in this case. *See In re Acer Am. Corp.*, 626 F.3d at 1255. "By comparison, the subpoena powers of the [Eastern District of Michigan] may be expected to be invaluable, in the event process is required to hale relevant witnesses into court." *Id.* The second private factor also tips in favor of transfer. *See id.*

### c. Cost of Attendance of Willing Witnesses

The third private interest factor is the cost of attendance for willing witnesses. *Volkswagen I*, 371 F.3d at 203. Defendants argue that a majority of the witnesses, including Defendants' employees with relevant knowledge of the infringement and damages claims, reside in the Eastern District of Michigan, and that transfer of the action will reduce their cost of attendance. (Doc. 25 at 9.) Defendants also note that Plaintiff would not have a similar number of witnesses who would need to travel if the case is transferred to the Eastern District of Michigan. (*Id.*) Plaintiff responds that both parties will have a small number of party witnesses with proportionate inconvenience.[3]

---

[3]Plaintiff further argues that Defendants have failed to specifically identify their key witnesses located in the transferee district. (Doc. 31 at 11.) The declaration by Defendants' vice president for operations technology and support is sufficiently specific for this purpose. (*See* doc. 25-1 at 2-3.)

(Doc. 31 at 12.)

The Fifth Circuit employs a 100-mile rule to assess the third private interest factor of cost of attendance for willing witnesses. *See Volkswagen I*, 371 F.3d at 204-05. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* "Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." *Id.* at 205. "The Court must consider the convenience of both the party and non-party witnesses." *Vargas v. Seamar Divers Int'l, LLC*, 2011 WL 1980001, at *7 (E.D. Tex. May 20, 2011) (citing *Volkswagen I*, 371 F.3d at 204 (requiring courts to "contemplate consideration of the parties and witnesses")).

Here, Defendants have presented evidence warranting a finding that the third private interest factor favors transfer. A declaration from their vice president of operations technology and support states that research, design, and development of the accused products took place in Defendants' facilities in Ann Arbor, Michigan, and that foreseeable witnesses with knowledge of the research, design, and development of the accused applications reside and work in Ann Arbor. (Doc. 25-1 at 2.) In comparison, there is no evidence that Plaintiff has any employees in Texas who are potential witnesses. (*See* doc. 25-4.) Plaintiff's initial disclosures in the 2011 action, submitted by Defendants, identify three Puerto Rican residents as having relevant knowledge of the '955 patent, its conception, reduction to practice, and its prosecution history. (Doc. 25-4 at 3-4.) The only witnesses identified to reside in this district are two Dallas attorneys purportedly having knowledge

of the '955 patent, its prosecution history, and its acquisition by Plaintiff.  (Doc. 25-4 at 4.)

Based on this evidence, it appears that a majority of the witnesses in the action would be from Michigan, with a couple of witnesses from Puerto Rico, and another couple of witnesses potentially from Dallas.  To the extent that the attorneys from this district can be considered potential witnesses, travel to Michigan will be costly and burdensome for them.  For the three Puerto Rican residents, travel to either district will be costly and burdensome.  However, for a majority of the witnesses residing in Michigan, being called into court in the Eastern District of Michigan will undoubtedly be more convenient and less costly than being haled into court in Texas.

While Plaintiff generally asserts that third-party witnesses, Defendants' franchisees, are available in this district, it is not apparent that the franchisees will have the same knowledge regarding the research, design, and development of the accused applications as Defendants' employees who actually researched, designed, and developed them.  Plaintiff, moreover, has not explained why it will not be able to call the franchisees located in or around Ann Arbor as witnesses if the need arises.  The third private interest factor also favors transfer.

### d.  Other Practical Problems

Neither party has pointed out other practical problems that would weigh for or against transfer of the case to the transferee district.  The fourth private interest factor is therefore neutral.

### 2.  Public Interest Factors

In addition to considering the private interest factors, a court must also consider the *forum non conveniens* public interest factors to see if they favor transfer.

### a.  Court Congestion

The first public interest factor is the administrative difficulties flowing from court

congestion. *Volkswagen I*, 371 F.3d at 203.  Defendants argue that this factor favors them because this district is twice as congested as the Eastern District of Michigan: the transferee district judges have on average 461 pending cases where as judges in this district have on average 700 pending cases.  (Doc. 25 at 10.)  Plaintiff responds with statistics showing that when it comes to patent cases, this district is more efficient than the Eastern District of Michigan: (1) this district takes 2.26 years for a patent case to trial versus 3.41 years in the Eastern District of Michigan; and (2) this district takes 0.97 years to resolution of a patent case whereas the Eastern District of Michigan takes 1.10 years.  (Doc. 31 at 13-14.)  Defendants respond, in turn, that the difference in average time for disposition between the Eastern District of Michigan and the Northern District of Texas is only about 48 days, and that the earlier patent cases Plaintiff filed have been pending for over two years.[4] (Doc.  32 at 8.)

Although the first public interest factor is speculative, it slightly weighs against transfer due to the quicker time to trial and disposition in patent cases. *See ColorQuick L.L.C. v. Vistaprint Ltd.*, 2010 WL 5136050, at *6 (E.D. Tex.  July 22, 2010) (finding that the "district's quicker time to trial in patent cases weighs slightly against transfer.").

### b. Local Interest

The second public interest factor is the local interest in having localized interests decided at home. *Volkswagen I*, 371 F.3d at 203.  Defendants contend that the transferee district has a localized interest in litigation involving a defendant residing in that forum, in accused products developed in that forum, and in relevant witnesses and documentation located in that forum. (Doc.

---

[4]Only one out of the five pending cases have been pending for over two years. *See H-W Technology, L.C. v. Apple, et al.*, No.  3:11-cv-0651; *H-W Technology, L.C. v.  Overstock.com, Inc.*, No. 3:12-cv-0636; *H-W Technology, L.C. v. Papa John's Int'l, Inc. et al.*, No.  3:13-cv-1925; *H-W Technology, L.C. v. Yum! Brands, Inc., et al.*, No.  3:13-cv-1921; and *H-W Technology, L.C. v. Domino's Pizza, LLC et al.*, No.  3:13-cv-1922.

25 at 10.)  Plaintiff responds that this district has a local interest in adjudicating this case because Defendants sell the allegedly infringing applications throughout the United States, including this district; it is domiciled in this district; and its principal owner and manager also reside in this district. (Doc. 31 at 15.)

"While the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue, if there are significant connections between a particular venue and the events that gave rise to a suit, [the second public interest] factor should be weighed in that venue's favor."  *In re Acer Am. Corp.*, 626 F.3d at 1256 (citing *In re Hoffman-La Roche Inc.*, 587 F.3d at 1338).  Moreover, where the accused products are sold throughout the United States, the citizens of the forum where the suit is brought have no more or less of a meaningful connection to the case than any other venue.  *See In re TS Tech*, 551 F.3d at 1321.

Here, the Eastern District of Michigan has a localized interest in this matter because the company alleged to have caused the harm is located there; the research, design, and development of the allegedly infringing products occurred there; and the relevant documents and witnesses are located there.  In addition, the outcome of the case will have a direct financial impact on a party located there.  The second public interest factor therefore weighs in favor of transfer.  *See id.*

### c. *Familiarity with the Governing Law*

The third public interest factor is "the familiarity of the forum with the law that will govern the case."  *Volkswagen I*, 371 F.3d at 203.  Defendants state that both this district and the Eastern District of Michigan are "equally capable of applying patent law to infringement claims[.]"  (Doc. 25 at 10.)  Plaintiff contends that this district is more capable because it is one of the 14 district courts participating in a ten-year pilot project to enhance its expertise in patent cases.  (Doc. 31 at

15.)  Despite Plaintiff's position to the contrary, both this district and the Eastern District of

Michigan are equally capable of applying federal patent law.  *See In re TS Tech*, 551 F.3d at 1320-

21.  The third public interest factor is therefore neutral.

### d.  Avoidance of Conflict of Laws

Both parties agree that there is no conflict of laws issue in this case.  The fourth public

interest factor is therefore also neutral.

## C.  Interest of Justice

The analysis of the "convenience of parties and witnesses" does not end the transfer of venue

inquiry; the court should also consider the "interest of justice" under § 1404(a).  *See Regents of*

*Univ.  Of Cal.  v.  Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed.  Cir.  1997).

Generally, a court should transfer a case where most of the witnesses and evidence in the

case are closer to the transferee venue, with few or no convenience factors favoring the venue

chosen by the plaintiff.  *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed.  Cir.  2009).[5]  In certain

circumstances, however, the Federal Circuit found that "[c]onsideration of interest of justice, which

includes  judicial  economy,  may  be  determinative  to  a  particular  transfer  motion,  even  if  the

convenience of the parties and witnesses might call for a different result."  *Regents of Univ.  Of Cal.*,

119 F.3d at 1565 (citation and internal marks omitted); *In re Aliphcom*, Misc.  No. 971, 449 F.App'x

33, 34-35 (Fed. Cir. Feb. 9, 2011); *Patent Harbor, LLC v.  Twentieth Century Fox Home Entm't,*

*LLC*, 2012 WL 1903875, at *2 (E.D. Tex.  May 25, 2012).  It pointed out, however, that each case

---

[5]The relevant facts in a motion to transfer inquiry are the facts that were present "when suit was instituted." *Compare In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013) (stating that for the motion to transfer inquiry, only the facts present at the time the "suit was instituted[,]" were relevant) (citing to *Hoffman v. Blaski*, 363 U.S. 335 (1960)) *with In re VTech Commc'ns, Inc.*, Misc. No. 909, 2010 WL 46332 at *2 (Fed. Cir. Jan. 6. 2010) (affirming the district court's decision to deny transfer even though it considered the claim construction opinion published subsequent to the motion to transfer filing).

turned on its own facts and must be decided based on an individualized, case by case consideration of the relevant factors, balancing convenience and efficiency. *In re Vistaprint Ltd.*, 628 F.3d 1342, 1347 (citing *Koster v. Lubermens Mut. Cas. Co.*, 330 U.S. 518, 527 (1947)); *Van Dusen*, 376 U.S. at 622.

Here, Defendants argue that courts routinely permit cases involving same patents to proceed in different districts, and that the cases filed in 2011[6] "clearly would be on different tracks" necessitating different claim construction. (Doc. 32 at 7.) They rely on *Pergo, Inc. v. Alloc, Inc.*, 262 F. Supp.2d 122, 133 (S.D.N.Y. 2003), where the court permitted severance and transfer of improperly joined parties during the infancy of the action, particularly because there was a pending declaratory judgment action involving the same patent in the transferee district. They also rely on *Philips Elec. N. Am. Corp. v. Contec Corp.*, 220 F.R.D. 415, 418 (D. Del. 2004), where the court merely severed the action because defendants were improperly joined; it did not transfer the case. These cases are factually distinguishable.

Defendants also rely on *J2 Global Commc'ns, Inc. v. Protus IP Solutions, Inc.*, No. 6:08-cv-211, 2008 WL 5378010 (E.D. Tex. Dec. 23, 2008). *J2 Global* is likewise distinguishable because the patent at issue was just one of four patents pending in the transferee district, and the transferee district had made no progress on the relevant patent. *Id.* at *5. The *J2 Global* court acknowledged that transferring a case to a different district where other relevant cases are pending is "most appropriate when one court has extensive familiarity with the technology or the legal issues involved, a claim construction opinion has been prepared, and the case involve the same or similar defendants with the same or similar products." *Id.*

---

[6]Of the four other pending cases by H-W Technology, only one was filed in 2011.

Defendants also claim that the separate suits "will be subject to 'significantly different discovery, evidence, proceedings, and trial'", citing *In re Zimmer Holdings, Inc.*, 609 F.3d 1378 (Fed. Cir. 2010). (Doc. 32 at 7.) In *Zimmer Holdings*, however, the cases had little overlap: "[o]f the six patents asserted in one case, and the nine patents asserted in another case, only one patent was common to the two." *ColorQuick, LLC v. Vistaprint Ltd.*, No. 6:09-cv-323, 2010 WL 5136050, at *8 (E.D. Tex. July 22, 2010) (referring to *Zimmer Holdings*). Further, both actions were "in the infancy stages of litigation." *Zimmer Holdings*, 609 F.3d at 1382.

Unlike *Zimmer Holdings*, this case is one of five pending actions in this district involving the same patent and allegedly similar underlying technology, with at least some overlapping claim construction. *See Novartis Vaccines and Diagnostics, Inc. v. Bayer Healthcare, LLC*, No. 2:08-cv-068 (TJW), 2009 WL 3157455, at *5 (E.D. Tex. Sept. 28, 2009) (concluding that because the two actions involve the same patent, "[t]he two cases involve the same claim construction issues and transferring the case will only consume unnecessarily additional judicial resources."). At least two of the cases were pending here for at least one year prior to the filing of this case, and the cases all involve similar defendants and products. As a result, this Court has become familiar with "the only asserted patent and the related technology" and has already issued one claim construction opinion concerning the patent at issue. *In re Vistaprint Ltd.*, 628 F.3d at 1346; *In re Google*, 412 F. App'x 295, 296 (Fed. Cir. 2011) ("Courts have consistently held that judicial economy plays a paramount role in trying to maintain an orderly, effective, administration of justice and having one trial court decide all of these claims clearly further that objective."). "Where there are related lawsuits involving the same plaintiff, the same patent, and similar technology, transfer to another venue will prevent the parties from taking advantage of the built-in efficiencies that result from having related

cases before the same judge." *Realtime Data, LLC v. Stanley*, No. 6:09cv326-LED-JDL, 2010 WL 1064474, at *3 (E.D. Tex. Mar. 18, 2010) (citation and internal marks omitted).  Keeping this suit in this district therefore would promote judicial efficiency.[7]  *Id.* at *4-5.

Considering the interest of justice issue under § 1404(a), Defendants have failed to carry their burden of showing that the Eastern District of Michigan is "clearly more convenient." *Volkswagen II*, 545 F.3d at 315.  Therefore, it is appropriate to deny transfer of the action to the Eastern District of Michigan.

### III.  CONCLUSION

The motion to transfer should be **DENIED**.

**SO RECOMMENDED**, this 30th day of October, 2013.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[7]Defendants cite to the transfer of Plaintiff's action against Apple, Inc. in case no. 3:11-cv-651.  (Doc. 25 at 5.)  At the time of that decision, however, there were no other pending cases involving the same patent, and no claim construction opinion had yet been issued.  In addition, the parties in last three pending actions (including this one) have agreed to stay those cases pending appellate review of the claim construction opinion, and to dismiss those cases if the claim construction is upheld.  These facts and changed circumstances support a different outcome for the transfer motion in this case.

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

15